## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| WALTER KEITRIC FREEMAN, | § | |
| | § | |
| Movant, | § | |
| | § | |
| vs. | § | CIVIL NO. 4:15-CV-_____ |
| | § | CRIM NO. 4:12-cr-00479-2 |
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Respondent. | § | |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE BY A PERSON IN FEDERAL CUSTODY

COMES Movant, WALTER KEITRIC FREEMAN ("Freeman"), by and through counsel, and in support of this memorandum of law would show as follows:

## I. JURISDICTION

Freeman is timely filing his Motion to Vacate, Set Aside, or Correct a Sentence by a Person in Federal Custody Pursuant to 28 U.S.C. § 2255 ("§ 2255 Motion") contemporaneously with this Memorandum of Law. Jurisdiction is vested in this District Court that presided over and imposed sentence pursuant to Rule 4(a) of the Rules Governing §2255 Proceedings. See *Liteky v. United States*, 510 U. S. 540, 562 (1994).

## II. STATEMENT OF THE GROUNDS FOR REVIEW

A.     Whether pretrial counsel's failure to: (1) properly communicate with Freeman and inform him of the relevant circumstances and likely consequences of pleading guilty as opposed to proceeding to trial; (2) conduct an adequate independent pretrial investigation; (3) file substantive pretrial motions to put the government's case to adversarial testing; and (4) review, discuss and explain Freeman's written Plea Agreement to him deprived him of effective assistance of counsel under the Sixth Amendment in the pretrial and plea context of the proceedings.

B.     Whether sentencing counsel's failure to: (1) review, discuss and explain the PSR to Freeman; (2) file a memorandum in mitigation of punishment and move the Court for a downward variance based on the 18 U.S.C. § 3553(a) sentencing factors; and (3) object to Freeman's sentence being substantively unreasonable deprived him of effective assistance of sentencing counsel under the Sixth Amendment to the Constitution of the United States and a fair and just sentence.

### III. <u>STATEMENT OF THE CASE</u>

#### A.    <u>Procedural Background</u>

On August 1, 2012, a grand jury sitting in the United States District Court for the Southern District of Texas, Houston Division, returned a six (6) count Indictment charging Freeman and four other co-defendants. See Doc. 1.[1] Count 1 charged Freeman with Conspiracy to Interfere with Commerce by Robbery, in violation of 18 U.S.C. § 1951(a). *Id.* Count 4 charged Freeman with Interference with Commerce by Robbery, in violation of 18 U.S.C. § 1951(a). *Id.* Count 5 charged Freeman with Discharging a Firearm During a Crime of Violence, in violation of 18 U.S.C. § 924(c)(1)(A)(iii). *Id.*

On April 12, 2013, a Re-arraignment Hearing was held and Freeman entered a plea of guilty to Counts 1 and 5 of the Indictment pursuant to a written Plea Agreement. See Docs. 88 & 90.

On April 12, 2013, the Court issued an Order for the U. S. Probation Department to prepare a PSR. See Doc. 91.

---

[1]

"Doc." refers to the Docket Report in the United States District Court for the Southern District of Texas, Houston Division, in  Criminal No. 4:12-cr-00479-2, which is immediately followed by the Docket Entry Number. "PSR" refers to the Presentence Report in this case, which is immediately followed by the paragraph ("¶") number.

On July 10, 2013, Freeman was sentenced to 177 months imprisonment, 5 years of Supervised Release, no fine, restitution in the amount of $200,000, and a Mandatory Special Assessment Fee of $200. See Docs. 109-110.

On July 17, 2013, Freeman timely filed a Notice of Appeal. See Doc. 112.

On October 16, 2014, the United States Court of Appeals for the Fifth Circuit ("Fifth Circuit") affirmed Freeman's conviction and sentence. See Docs. 181 and 193.

**B.**     **Statement of the Relevant Facts**

       1.     Relevant Offense Conduct

Between August 7, 2009, and November 21, 2009, Loomis Armored U.S. Inc. ("Loomis") was a business, which maintained offices throughout the United States, including Houston, Texas. Loomis engaged in the business of secured armored transport of United States currency in interstate commerce and in picking up and delivering United States currency to financial institutions and check cashing businesses. During the noted time frame, Allen Moore, Jr. ("Moore"), Walter Freeman ("Freeman"), Chad Haywood ("Haywood"), Hendrick Lynn ("Lynn"), and Corinthians Phillips ("Phillips") conspired to interfere with interstate commerce by robbing Loomis employees. On January 4, 2010, investigators received an anonymous tip identifying the above noted defendants as involved in two armored vehicle robberies, in August and November of 2009. See PSR ¶ 5.

4

On November 21, 2009, the FBI Bank Robbery Task Force responded to the robbery of a Loomis armored vehicle at the Senor Check Cashing store, located on South Gessner Street in Houston, Texas. See PSR ¶ 9. Subsequent to their arrival, task force members interviewed witnesses, including a Loomis guard, and several citizens, concerning the events. *Id.*

Wayne Small ("Small"), an employee of Loomis, reported working as a driver/guard since 2001, and being partnered with a co-worker, Anthony Rubin ("Rubin"), for the past year. See PSR ¶ 10. Small advised that he and Rubin arrived at Senor Check Cashing and conducted a "dry run," without the cash being delivered, due to the large amount of currency ($200,000) being delivered. Small then returned to the armored vehicle and retrieved the bag of money. *Id.* As Small approached the door, he was struck by gunfire in the buttocks and right toe. *Id.* Small also had a cut on his left ankle. At that time, Small observed two males running toward him. *Id.* Small indicated one male (later identified as Freeman) had a handgun. *Id.* Small dropped the bag of money and ran behind the store, where Rubin was able to pick him up. *Id.*

Melesia Acosta ("Acosta"), a customer of Senor Check Cashing, advised that he observed a silver vehicle arrive into the parking lot, and noticed a male wearing a hooded sweatshirt with a mask over his face. See PSR ¶ 11. Acosta also noticed the

male had a handgun in his hand. *Id.* A second male (later identified as Haywood) then exited the silver vehicle wearing a hooded sweatshirt and a mask over his face. *Id.* Acosta noticed this male was holding a semi-automatic assault rifle. *Id.* When the driver approached the store with the bag of money, Acosta observed the male with the pistol shooting toward the guard, while the male with the assault rifle waived his rifle back and forth towards the parking lot. *Id.* Acosta noted the guard dropped the bag of money, and the males grabbed the bag before leaving in the silver vehicle. *Id.*

An anonymous tip identified Corinthians Phillips ("Phillips") as a former employee of Compass Bank, who was involved in a bank robbery, which occurred at Compass Bank on April 14, 2009. See PSR ¶ 12. Pursuant to the anonymous tip, search and arrest warrants were executed at Phillips' residence, located in Missouri City, Texas. *Id.* Upon execution of the search warrant, Hendrick Lynn ("Lynn"), who was Phillips' boyfriend and father of their child, Freeman, and Haywood were located inside of the residence. *Id.* The search warrant resulted in the seizure of numerous items: (1) a plastic Smith and Wesson gun case containing a chrome colored Smith and Wesson magazine and six rounds of .40 caliber ammunition, a gun lock, and one fired casing; (2) a black plastic Glock gun case containing a disassembled Glock 33 pistol, a sales receipt dated May 17, 2009, in the name of Phillips, for a Glock 33, MTL530, a brown envelope containing two fired casings, a nine round .357 caliber

Glock magazine loaded with five .357 caliber rounds of ammunition, and a 13-round .40 caliber Glock magazine loaded with 12 .40 caliber rounds of ammunition; (3) one box of ammunition containing 32 rounds of .40 caliber ammunition; a Glock, model 23, .40 caliber pistol; (4) a Smith and Wesson .40 caliber pistol; (5) a Smith and Wesson .40 caliber magazine loaded with 13 rounds of ammunition; and, (6) a Sig Sauer .40 caliber pistol, and a Sig Sauer magazine loaded with 10 .40 caliber rounds of ammunition. *Id.*

On June 1, 2012, Freeman was interviewed, pursuant to a proffer agreement. See PSR ¶ 19. He advised that he did not participate in the August 7, 2009, armored vehicle robbery, but was aware that Haywood, Lynn, and Moore participated in that robbery. *Id.* He stated that on the night of the robbery, he overheard Moore and Haywood speaking in the garage at the residence about how they each shot the guard. *Id.* He further noted that there was no money obtained during the robbery. *Id.* He also advised that Phillips's Glock pistol and Lynn's Glock pistol were both used during the robbery. *Id.*

Freeman also discussed the November 21, 2009, armored vehicle robbery, and advised that it was Haywood who convinced Lynn that Freeman should be involved in this robbery. See PSR 21. He stated that all of them had watched the armored car at the check cashing business for three straight Saturdays. *Id.* Freeman further stated

that Lynn provided him with the loaded handgun to use during the robbery. *Id.* The plan was that Lynn would be the driver and Haywood would confront the guard. Phillips was to be the switch car driver. *Id.* After the armored car arrived, Freeman and Haywood exited Haywood's vehicle, each armed with a firearm and wearing masks. *Id.* Freeman shot the armored guard two to three times. *Id.* He stated that he was aiming at the bag the guard was carrying. *Id.* After Freeman shot the guard, Haywood grabbed the bag of money and both of them got into the rear of the vehicle being driven by Lynn. *Id.* They then met up with Phillips and exchanged vehicles, before everyone returned to the Briar Spring residence. There was approximately $200,000 obtained from the robbery, which was divided evenly among Freeman, Lynn, Haywood, and Phillips. *Id.*

## 2.   Plea Proceedings

On April 12, 2013, Freeman appeared in court with counsel and entered a guilty plea to Counts 1 and 5 of the Indictment, pursuant to a written Rule 11(c)(1)(A) and (B) Plea Agreement. See Docs. 88 & 90. In exchange for his guilty plea and waiving his right to appeal, the government agreed: (1) to dismiss Count 4 of the Indictment; (2) not oppose Freeman being sentenced to the low-end of the applicable Guideline range; (3) not to oppose a 3-level downward adjustment for acceptance of responsibility; and (5) to file a USSG § 5K1.1 motion, if the United States determined

8

that Freeman had provided substantial assistance. See Doc. 90. The Court issued an

Order for the U. S. Probation Department to prepare a PSR. See Doc. 91.

### 3.    Presentence Report Calculations

On June 6, 2013, the U. S. Probation Department issued the PSR.   See PSR ¶¶

28-62. According to the PSR, the two robberies (Pseudo Counts "A" and "B") could

not be grouped under the grouping rules found at USSG § 3D1.2 as these counts did

not involve substantially the same harm within the meaning of the Guidelines.

Therefore, the computations for each pseudo count was computed separately followed

by application of USSG § 3D1.4, determining the Combined Offense Level. See PSR

¶ 29.

On Pseudo Count A, the PSR recommended a Base Offense Level of 20 on

Count 1 of the Indictment pursuant to USSG § 2B3.1(a). See PSR ¶ 31. The PSR also

recommended a two (2) level  increase since the property of Loomis Armored U.S.A

Inc., a financial institution, was taken pursuant to USSG § 2B3.1(b)(1). See PSR ¶ 32.

The PSR recommended a seven (7) level increase because Freeman was held

accountable for the discharge of a firearm, pursuant to USSG  § 2B3.1(b)(2)(A). See

PSR ¶ 33. The PSR also recommended a four (4) level increase because a victim

sustained serious bodily injury, pursuant to USSG § 2B3.1(b)(3)(B). See PSR ¶ 34.

The PSR calculated the Adjusted Offense Level to be level 33. See  PSR ¶ 38.

9

On Pseudo Count B, the PSR recommended a Base Offense Level of 20 on Count 1 of the Indictment pursuant to USSG § 2B3.1(a). See PSR ¶ 39. The PSR also recommended a two (2) level increase since the property of Loomis Armored U.S. Inc., a financial institution, was taken pursuant to USSG § 2B3.1(b)(1). See PSR ¶ 40. Another four (4) level increase was recommended by the PSR because a victim sustained serious bodily injury pursuant to USSG § 2B3.1(b)(3)(B). See PSR ¶ 41. The PSR also recommended that the offense level be increased by two (2) levels for the loss amounting to $200,000 pursuant to USSG § 2B3.1(b)(7)(C). See PSR ¶ 42. The PSR calculated the Adjusted Offense Level to be level 28. See PSR ¶ 46.

The PSR determined that the combined Adjusted Offense Level was 34. See PSR ¶ 52. The PSR also recommended a three (3) level reduction for acceptance of responsibility and it calculated Freeman's Total Offense Level to be level 31 in Criminal History Category I, which yielded an advisory Guideline range of 108-135 months imprisonment. See PSR ¶¶ 53-56 & 83. This calculation did not include the consecutive sentence of 120 months as to Count 5 for the firearm violation under 18 U.S.C. § 924(c). See PSR ¶¶ 82-83.

Prior to sentencing, Freeman objected to paragraphs 17, 20, and 25 in the PSR, stating that he participated in the August 7, 2009, robbery and lied to authorities about his participation. He maintained that he was not involved in that robbery. See

Freeman's Sealed Objections to PSR. No Docket Entry.

The government also filed a response explaining that Freeman's Guidelines range was higher than the parties expected as a result of counting the August 7, 2009, robbery. See Sealed Statement of No Objection and Response to Defendant's Anticipated Objections to the PSR and Motion for Acceptance. The government indicated that the parties had only contemplated a sentence based on Freeman's participation in the November 21, 2009, robbery, noting that the August robbery was not part of the factual basis underlying Freeman's guilty plea, but recognizing that the PSR correctly assessed Freeman's relevant conduct based on the co-defendants' proffer interviews. *Id.* The government recommended that Freeman receive a two-point reduction for minor participation as a "look-out" in the August robbery if the Court found it should be counted as relevant conduct, and also recommended a three (3) level reduction for timely acceptance of responsibility. *Id.*

4.    Sentencing Proceeding

At sentencing, on July 10, 2013, the District Court addressed Freeman's objections to the calculations assessed for his involvement in the August 7, 2009, robbery. See Doc. 139. The prosecutor maintained the position stated in the government's written response. *Id.* at 5-6. The prosecutor advised that she would not move for a USSG § 5K1.1 downward departure because Freeman had not provided

substantial assistance, but recommended that he receive a sentence at the  low end of the Guidelines' range. *Id.* at 8. The Court sustained Freeman's objection to inclusion of the August  robbery in calculating his offense level as to Count One, and based his Guidelines' range solely on his conduct during the November 21, 2009, robbery. *Id.* at 11. Adopting the PSR's calculations as its own, the Court determined that Freeman's Base Offense Level was 20, and applied a two (2) level increase because the property was taken from a financial institution, a four (4) level increase because the victim sustained serious bodily injury, and a two (2) level increase because the amount of loss was more than $50,000, but less than $250,000, and a three (3) level reduction for timely acceptance of responsibility. *Id.* at 11-12. When asked if everyone was in agreement with that calculation, the attorneys for both sides answered "Yes, Your Honor". *Id.* at 7. The Court concluded that Freeman's Total Offense Level was level 25 in Criminal History Category I, which yielded  a Guidelines' imprisonment range of 57 to 71 months as to Count One; and that a mandatory consecutive sentence of 120 months imprisonment applied to Count Five. *Id.*

In pronouncing sentence, the Court stated that it had assessed the sentencing objectives under 18 U.S.C. § 3553(a),including Freeman's personal characteristics and criminal history, as well as the seriousness of the offense, and determined that the

12

minimum Guidelines sentence of 57 months imprisonment was appropriate. *Id.* at 11. The Court stated: "I have to say this is a very serious crime. Armed robbery with a weapon, discharging a weapon, actually injuring someone is a serious crime". *Id.* The court sentenced Freeman to a term of 57 months as to Count One and 120 months as to Count Five, to be served consecutively, for a total term of 177 months imprisonment, five (5) years of Supervised Release, no fine, restitution in the amount of $200,000 to be paid jointly and severally to Loomis Armored U.S., Inc., and a Mandatory Special Assessment Fee of $200. *Id.* at 11-13.

The Court advised Freeman that he had waived some or all of his rights to appeal in his Plea Agreement. Lastly, the Court dismissed Count Four pursuant to the government's motion in  accordance with the plea agreement. *Id.* at 14.

On July 17, 2013, Freeman timely filed a Notice of Appeal. See Doc. 112.

> 5.   Appellate Proceeding

On May 22, 2014, Freeman contested the validity of his plea agreement on two grounds: he was uninformed as to all of the elements of the indictment which would later enhance his sentence; and he did not have the opportunity to either read or comprehend the plea agreement before his rearraignment hearing. See Doc. 193-1.

On October 16, 2014, the Fifth Circuit affirmed the District Court's Judgment based on Freeman's alleged knowing and voluntary appeal waiver. *Id.*

## IV. <u>COGNIZABLE ISSUES UNDER § 2255</u>

Section 2255 "provides the federal prisoner with a post-conviction remedy to test the legality of his detention by filing a motion to vacate judgment and sentence in his trial court." *Kuhn v. United States*, 432 F.2d 82, 83 (5th Cir.1970). The statute establishes that a prisoner in custody under a sentence of a court established by Congress "may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255. Where there has been a "denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack, the court *shall vacate and set the judgment aside* and *shall* discharge the prisoner or resentence him *or grant a new trial* or correct the sentence as may appear appropriate." *Id.* (emphasis added). See *Heflin v. United States*, 358 U. S. 415, 421 (1959). Section 2255 provides four grounds that justify relief for a federal prisoner who challenges the imposition or length of his or her detention: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States"; (2) "that the court was without jurisdiction to impose such sentence"; (3) "that the sentence was in excess of the maximum authorized by law"; or (4) "that the sentence is otherwise 'subject to collateral attack.'" 28 U. S. C. § 2255 (2011). Despite this apparently broad language, violations of federal law are only cognizable if they involve a "fundamental defect" resulting in a "complete

14

miscarriage of Justice." *Davis v. United States*, 417 U. S. 333, 346 (1974).

The Sixth Amendment guarantees the right to effective assistance of counsel in criminal prosecutions. See *Strickland v. Washington,* 466 U. S. 668 (1984)*.* As such, ineffective assistance of counsel claims are cognizable in a §2255 setting because they are of constitutional dimension. See *Kimmelman v. Morrison*, 477 U. S. 365, 371-79 and n.3 (1986); *Strickland*, supra.

To prevail on an ineffective assistance of counsel claim, Freeman must satisfy the two-part test enunciated in *Strickland v. Washington,* 466 U.S. 668, 687 (1984). First, he must demonstrate that counsel's performance fell below an objective standard of reasonableness. *Id.* "We have described that standard as requiring that counsel 'research relevant facts and law, or make an informed decision that certain avenues will not be fruitful.'" *United States v. Conley*, 349 F.3d 837, 841 (5th Cir. 2003). Second, Freeman must prove that he was prejudiced by counsel's substandard performance. "[T]o prove prejudice, Freeman must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 841-42. "And, of course, 'any amount of actual jail time has Sixth Amendment significance,' which constitutes prejudice for purposes of the *Strickland* test." *Conley,* 349 F.3d at 842 (quoting *Glover v. United States,* 531 U.S. 198, 203 (2001)); and *United States v. Franks,* 230 F.3d 811, 815 (5th

Cir.2000)(finding prejudice where defendant was sentenced under Guidelines range of 70 to 87 months instead of the proper 57 to 71 months range). Additionally, "[o]ne of the most precious applications of the Sixth Amendment may well be in affording counsel to advise a defendant concerning whether he should enter a plea of guilty." *United States v. Rivas–Lopez,* 678 F.3d 353 (5th Cir. 2012) (quoting *Reed v. United States,* 354 F.2d 227, 229 (5th Cir.1965)).

The familiar two-part test of *Strickland* referenced above has been applied by the Supreme Court and the Fifth Circuit in a wide variety of contextual challenges to the effectiveness of counsel's performance in all phases of the proceedings. See *Avery v. Alabama,* 308 U. S. 444 (1940). Defendants can raise ineffective assistance claims concerning performance before trial [*Kimmelman v. Morrison*, 477 U. S. 365, 371-79; *Draughon v. Dretke,* 437 F. 3d 286, 296 (5th Cir. 2005)]; during plea negotiations [*Padilla v. Kentucky*, 130 S. Ct. 1473, 1486 (2010) ("[T]he negotiation of a plea bargain is a critical phase of litigation for purposes of the Sixth Amendment right to effective assistance of counsel."); *Lafler v. Cooper*, 132 S. Ct. 136 (2012) (the Sixth Amendment right to counsel "extends to the plea-bargaining process. During plea negotiations, defendants are entitled to the effective assistance of competent counsel.")]; assistance during sentencing [*Glover v. United States,* 531 U. S. 198 (2001); *United States v. Herrera,* 412 F.3d 577, 581-82 (5th Cir. 2005); see also,

*United States v. Cronic,* 466 U.S. 648 (1984) ("The Court has uniformly found constitutional error without any showing of prejudice when counsel was either totally absent, or prevented from assisting the accused during a critical stage of the proceeding.")].

Rule 8 of the Rules Governing § 2255 Proceedings states: "If the [§ 2255] motion is not dismissed, the judge must review the answer, any transcript and records of prior proceedings, and any materials submitted... to determine whether an evidentiary hearing is warranted".  See *United States v. Cavitt,* 550 F.3d 430, 441-42 (5th Cir. 2008). In §2255 proceedings, "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon, determine the issues, and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255. An evidentiary hearing in open court is required when a movant presents a colorable Sixth Amendment claim showing disputed facts beyond the record and a credibility determination is necessary in order to resolve the issue. See *United States v. Edwards*, 442 F.3d 258, 264 (5th Cir. 2006).

Upon granting a §2255 Motion, "[t]he court shall vacate and set the judgment aside and shall discharge the prisoner or resentence [him] . . . or correct the sentence as may appear appropriate." *Andrews v. United States*, 373 U. S. 334, 339 (1963).

17

# V. DISCUSSION

In this case, ineffective assistance of counsel raises its ugly head throughout these proceedings. Freeman's counsel, Kirby J. Taylor ("Taylor") and Michael J. Edwards ("Edwards"), were ineffective during pretrial and in the plea context of the proceedings. Counsel was also ineffective at Freeman's sentencing hearing. He failed to adequately communicate with Freeman throughout the proceedings. He also failed to advise Freeman of the relevant circumstances and likely consequences of pleading guilty or proceeding to trial.

A. **Pretrial Counsel's Failure To: (1) Properly Communicate with Freeman and Inform Him of the Relevant Circumstances and Likely Consequences of Pleading Guilty as Opposed to Proceeding to Trial; (2) Conduct an Adequate Independent Pretrial Investigation; and (3) File Substantive Pretrial Motions to Put the Government's Case to Adversarial Testing Deprived Freeman of Effective Assistance of Counsel under the Sixth Amendment in the Pretrial and Plea Context of the Proceedings.**

1.    Failure to Communicate with Freeman

Chapter 1, Rule 1.4 of the Texas Rules of Professional Conduct, dealing with communication, states that:

(a)    A lawyer shall:

(1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in RPC 1.0(e), is required by these Rules;

18

(2) reasonably consult with the client about the means by which the client's objectives are to be accomplished;

(3) keep the client reasonably informed about the status of the matter;

(4) promptly comply with reasonable requests for information; and

(5) consult with the client about any relevant limitation on the lawyer's conduct when the lawyer knows that the client expects assistance not permitted by the Rules of Professional Conduct or other law.

(b)    A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

Based on the above, one of the cornerstones of effective legal representation by an attorney is communication with his client.

In this case, there was not any reasonable communication from the beginning between either Taylor or Edwards and Freeman so that he could effectively participate in his representation. Freeman's counsel certainly did not meet the standard as set forth above in Rule 1.4 of the Texas Rules of Professional Conduct, or any other professional norm for that matter. Taylor and Edwards failed to reasonably consult with Freeman about the means to be used to accomplish his objectives, other than to push him into pleading guilty. Further, there was not any regular communication with Freeman regarding his case. Counsel only met with

Freeman approximately 3 or 4 times prior to his pleading guilty and at his sentencing.

Counsel in this case had a duty when Freeman made a reasonable request for information to promptly comply with said request, or to have a member of his staff acknowledge receipt of the request and advise him when a response would be forthcoming. However, Freeman's communications, including telephone calls, were not returned or acknowledged. He also did not receive written correspondence from his counsel. See Rule 1.4 of the Texas Rules of Professional Conduct.

Counsel also failed to provide sufficient information to Freeman so that he could participate intelligently in decisions concerning the objectives of his representation and the means by which they would be pursued. *Id.* Adequacy of communication depends in part on the kind of advice or assistance that is involved. From the beginning, Counsel advised Freeman that he had to plead guilty. Counsel never considered trial as an option for Freeman. Counsel only advised Freeman that if he proceeded to trial, he would receive a significantly harsher sentence. Because Freeman was unschooled in the law, he wholly relied on his counsels' advice and he acquiesced to same. Further, prior to the Rearraignment Hearing, counsel failed to adequately review the Plea Agreement with Freeman before that proceeding. Counsel failed to review, consult, or discuss the terms and conditions of the Plea Agreement so that Freeman had a reasonable understanding of that to which he was about to

20

agree. Counsel also failed to explain the general strategy and prospects of success and the likely result of the sentence he would receive. The guiding principle is that a lawyer should fulfill reasonable client expectations for information consistent with the duty to act in the client's best interest. Counsel in this case failed to do so.

After he pled guilty and the PSR was released, Counsel failed to adequately review, discuss or explain it to Freeman. Counsel also did not file sufficient objections to the PSR.

"[C]riminal justice today is for the most part a system of pleas, not a system of trials . . . [T]he right to adequate assistance of counsel cannot be defined or enforced without taking into account the central role plea bargaining plays in securing convictions and determining sentences." *Lafler v. Cooper*, 132 S. Ct. 1376, 1388 (2012). Because of "[t]he reality [ ] that plea bargains have become so central to the administration of the criminal justice system . . . ," *Missouri v. Frye*, 132 S. Ct. 1399, 1407 (2012), the Supreme Court has recognized that the Sixth Amendment right to counsel "extends to the plea-bargaining process. During plea negotiations defendants are entitled to the effective assistance of competent counsel." *Lafler*, 132 S. Ct. at 1384 (internal citations and quotation marks omitted); see also, *Frye*, 132 S. Ct. at 1407.

In the plea bargaining stage of criminal proceedings, the second part of the *Strickland* analysis, i.e., the "prejudice" prong, "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); accord *Lafler v. Cooper*, 132 S. Ct. 1376, 1384 (2012); *Missouri v. Frye*, 132 S. Ct. 1399, 1409-10 (2012); *United States v. Rivas–Lopez,* 678 F.3d 353 (5ᵗʰ Cir. 2012)*.*

Once the defendant has satisfied the first prong of *Strickland* by establishing that counsel's performance was constitutionally defective, the threshold showing of prejudice required to satisfy the second prong is comparatively low—in such cases, the prejudice prong is satisfied if there is a "reasonable probability" that the defendant would have proceeded to trial, but for counsels' ineffective assistance or inadequate advice. *Lafler*, 132 S. Ct. at 1385; see also, *Hill v. Lockhart*, 474 U.S. at 59 (which stands for the proposition that it is easier to show prejudice in the guilty plea context than in other contexts because the claimant need only show a reasonable probability that he would have pleaded differently). Accordingly, if reasonable minds could conclude that a fully informed defendant would have proceeded to trial, then Freeman is entitled to relief. Moreover, counsel failed to provide Freeman with an estimated range of the penalties that could result from a trial conviction. See *Herrera,* 412 F.3d at 581-82. When this presumption applies, the defendant is not required to submit

22

additional objective evidence to "support his own assertion that he would have proceeded to trial if he had been provided with the benefit of effective assistance." *Id.*

In this case, counsel advised Freeman that he had to plead guilty or that he would receive a much harsher sentence if he proceeded to trial. He estimated a sentence of 8 to 10 years. Based on that representation, Freeman reasonably believed that he would receive a sentence of less than 10 years. However, he received a 177 month sentence, which was not run fully concurrent.

The lack of communication with his counsel caused Freeman to not be informed of anything except that he had to plead guilty. This must be deemed as deficient performance and Freeman was actually prejudiced because counsel failed to properly inform him, and he could not make an informed decision of whether he should plead guilty or proceed to trial.

Accordingly, Freeman's conviction and sentence should be vacated so that he may plea anew.

> 2.   <u>Failure to Conduct an Adequate Independent Pretrial Investigation</u>

Defense counsel has the obligation to conduct a "reasonably substantial, independent investigation." *Neal,* 239 F.3d at 688 (quoting *Baldwin v. Maggio,* 704

23

F.2d 1325, 1332-33 (5th Cir.1983)). The Supreme Court has explained the governing

standard:

> Strategic choices made after thorough investigation of law and
> facts relevant to plausible options are virtually unchallengeable;
> and strategic choices made after less than complete investigation
> are reasonable precisely to the extent that reasonable professional
> judgments support the limitations on investigation. In other
> words, counsel has a duty to make reasonable investigations or to
> make a reasonable decision that makes particular investigations
> unnecessary. In any ineffectiveness case, a particular decision not
> to investigate must be directly assessed for reasonableness in all
> the circumstances, applying a heavy measure of deference to
> counsel's judgments.

*Strickland,* 466 U.S. at 690-91.

In this case, Freeman's counsel failed to conduct any kind of a reasonable

independent pretrial investigation of his case. Counsel failed to research the case law,

interview witnesses or investigate the facts of his case. There was no independent

pretrial investigation to challenge the government's case-in-chief. Counsel failed to

move the Court for a private investigator to independently investigate Freeman's

case. There was not any kind of independent pretrial investigation conducted

whatsoever to Freeman's knowledge except for reading the government's case file

and discussing it with the government prosecutor. It is well settled in this circuit that

a criminal investigation requires investigators to piece together evidence, often

circumstantial and from multiple sources, to prove a defendant's innocence or guilt.

See *United States v. Bernard,* 762 F.3d 467 (5th Cir. 2014) ("counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary")(quoting *Strickland*, 466 U.S. at 690-91). Although courts are typically required to show heightened deference to an attorney's strategic decisions supported by professional judgment, where a failure to investigate does not reflect sound professional judgment, such deference is not appropriate. *Id.*

Accordingly, Freeman's counsel failed to research and properly prepare this case so that he could inform his client of the relevant circumstances and likely consequences, so that he could make an informed decision of whether to plead guilty or to proceed to trial.

### 3.   Failure to File Substantive Pretrial Motions

In this case, Counsel failed to file any substantive pretrial motions on behalf of Freeman to determine the strength of the government's case-in-chief. Had he filed motions such as a Motion for Discovery; a Request for Rule 404(b) of the Federal Rules of Evidence [Material]; a Motion for *Brady/Giglio* Material; a Motion to Compel Agents to Preserve Rough Notes; a Motion for Identity of Confidential Informants ("CI") and for Equal Access to for Purposes of Interview [Note: said Motion in this regard would contain an outstanding list of approximately 20 questions relative to the CI's background and history of both this and other previous cases in

25

her dealings with government officials, her drug habits, her criminal history, methods of payments to her, history of veracity and number of previous cases in which she was not used because of specific instances of lying, together with information relative to pending criminal charges against the CI]; a Motion to Dismiss for Want of Sufficiency; a Motion to Suppress Evidence; and a Motion to Obtain the Grand Jury Testimony and a Motion for a Mental Evaluation Pursuant to 18 U.S.C.§ 4241. Freeman requested that his counsel provide him with the government's discovery to no avail.

The record in this instance speaks for itself. The U. S. District Court Docket Report reflects that there were **no pretrial motions** filed by Freeman's counsel prior to his guilty plea, except for  a Waiver of Detention Hearing. It is essential to note that by waiving Freeman's detention hearing, counsel missed out on a golden opportunity to assess and evaluate the strength of the government's case and the evidence that they had against him.

Such fundamental pretrial motions are essential in the development and evaluation in assessing the strengths and weaknesses of the government's case, and would have significantly aided the defense in the decisional process of whether to negotiate a Plea Agreement or to proceed to trial. Because of the lack of compliance from counsel, Freeman was unable to obtain the discovery that he needed to be fully

informed so that he could make an informed decision on whether to plead guilty or proceed to trial. Without this information, he was unable to make an informed decision. As such, he had to rely on his counsels' advice. Had he been given the discovery in order to assess and evaluate the government's case-in-chief, there is a reasonable probability that he would have opted to proceed to trial.  Taylor and Edwards' representation was deficient because Freeman was not properly informed of the relevant circumstances and likely consequences of pleading guilty, as opposed to proceeding to trial, in order to make an informed decision about which course to take.

Accordingly, Freeman's conviction and sentence should be vacated so that he may plea anew.

**B.**    **Sentencing Counsel's Failure To: (1) Adequately Review, Discuss and Explain the PSR to Freeman; and (2) File a Memorandum in Mitigation of Punishment, Move the Court for a Downward Variance Based on the 18 U.S.C. § 3553(a) Sentencing Factors and Object to Freeman's Sentence as Being Substantively Unreasonable Deprived Him of Effective Assistance of Sentencing Counsel and a Fair and Just Sentence**.

1.    Failure to Review, Discuss and Explain the PSR to Freeman

On June 6, 2013, the U. S. Probation Department prepared and released the PSR in this case, which employed the 2012 version of the Federal Sentencing Guidelines. The PSR calculated a Base Offense Level of twenty (20) pursuant to

USSG § 2B3.1(a), plus two (2) additional levels were recommended because the offense allegedly involved taking property from a financial institution pursuant to § 2B3.1(b)(1). See PSR ¶¶ 39 and 40. The PSR sentencing calculation also recommended that Freeman's offense level be increased an additional four (4) levels for allegedly causing serious bodily injury pursuant to USSG § 2B3.1(b)(3)(B). See PSR ¶ 41. Pursuant to USSG § 2B3.1(b)(7)(C), the offense level was increased by two (2) additional levels, as the loss was more than $50,000, but not more than $250,000. The PSR determined the loss to be $200,000.

Prior to sentencing, counsel failed to adequately review, discuss or explain the PSR and its calculations to Freeman. As such, Freeman was again forced to wholly rely on the advice and acts and omissions of counsel. Counsel did file one objection to the PSR challenging the its recommendation that Freeman be held responsible for the August 7, 2009, robbery. See Doc. 139 at 5. The Court sustained Freeman's objection and took the August 7, 2009, robbery out of the relevant conduct calculation, and held Freeman accountable only for the November 21, 2009, robbery. *Id.* at 7.

However, counsel failed to file objections to the enhancements for allegedly taking from a financial institution and for causing serious bodily injury. The essential elements for these enhancement were not alleged in the Indictment and Freeman

28

never admitted to them in his Plea Agreement. Freeman was enhanced six (6) extra levels for these elements.

With regard to the financial institution enhancement, it is essential to note that an armored car service is not included in the definitions of a "financial institution." In recommending this enhancement, the PSR stated that Loomis Armored U. S., Inc. ("Loomis"), was a "financial institution", and therefore, Freeman's offense level should be increased by two (2) levels. See PSR ¶ 32. Further, at sentencing, the District Court stated "add a plus two because Loomis is a financial institution." See Doc. 139 at 7. However, because Loomis by definition is not listed as a financial institution pursuant to USSG § 2B1.1 Application Note 1, that two (2) offense level enhancement was error. Counsel should have objected to same. Had counsel objected to this enhancement, there is a reasonable probability that Freeman would have not been enhanced under this Guideline.

Regarding the enhancement for serious bodily injury, during the robbery of the armored vehicle guard, Freeman discharged a firearm, striking the guard on the buttocks and right toe. The PSR writer deemed this to be "causing serious bodily injury." Such injuries cannot be deemed to have caused extreme physical pain or the protracted impairment of a function of a bodily member, organ, or mental faculty; or required medical intervention such as surgery, hospitalization, or physical

rehabilitation. Further, Count Five of the Indictment charged Freeman with discharging a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(iii). This was double counting, which was error.

Without the enhancements for a financial institution and for serious bodily injury, Freeman's sentence on Count 1 would have been twenty-seven (27) months instead of fifty-seven (57) months.

The District Court found a Total Offense Level after all adjustments to be twenty-five (25) in Criminal History Category I, yielding an advisory Guideline range of fifty-seven (57) to seventy-one (71) months imprisonment. The District Court sentenced Freeman to fifty-seven (57) months (the low end of the Guideline range) for Count One, and the statutory minimum mandatory sentence of one hundred twenty (120) months for Count Five, a total sentence of one hundred seventy-seven (177) months imprisonment.

There is no question that a ten (10) year minimum mandatory sentence on Count 5 is a harsh sentence. However, to increase Freeman's sentence for another twenty-seven (27) months for the same basic conduct on Count 1 is a miscarriage of justice. Had counsel objected to this enhancement, there is a reasonable probability that the District Court would have sustained the objection and the result of the proceeding would have been a less harsh sentence.

Without objections from counsel, the District Court allowed the probation officer to include the two enhancements of elements uncharged in the Indictment and not admitted to by Freeman. Thus, his significant rights were violated by being subjected to enhancements that were never charged or admitted to by Freeman, as the law requires. The Court adopted the PSR as its own, with the exception of the inclusion of the relevant conduct of the August 7, 2009, robbery.

With regard to substantial assistance, the government claimed that the information Freeman gave to it was already known by the government and that it was unable to do much with it, but that he did attempt to help the government. According to the government, it just didn't turn into anything substantial.

Accordingly, Counsels' failure to file objections to Freeman's enhancements for a financial institution and for serious bodily injury was deficient performance and he was prejudiced because without the enhancements, there is a reasonable probability that Freeman's sentence would have been less harsh.

2.  <u>Failure to File a Memorandum in Mitigation of Punishment, Move the Court for a Downward Variance Based on the 18 U.S.C. § 3553(a) Sentencing Factors, and to Object to Freeman's Sentence Being Substantively Unreasonable</u>

In this case, Counsel failed to file any sentencing memorandum in mitigation of punishment, move the District Court for a downward variance based on the

sentencing factors under 18 U.S.C. § 3553(a), or object to Freeman's sentence being substantively unreasonable.

Where trial counsel has not "fulfill[ed] their obligation to conduct a thorough investigation of the defendant's background," . . . "counsel's failure to uncover and present voluminous mitigating evidence at sentencing could not be justified as a tactical decision." *Id.* at 522 (*Williams v Taylor*, 529 U.S. 362 (2000)). Therefore, the "principal concern in deciding whether [trial counsel] exercised 'reasonable professional judgment' is not whether counsel should have presented a mitigation case. Rather, we focus on whether the investigation supporting counsel's decision not to introduce mitigating evidence of Wiggins' background was itself reasonable." *Id.* at 522-24. The Court held that *Wiggins'* trial counsel's investigation was inadequate because "counsel abandoned their investigation of petitioner's background after having acquired only rudimentary knowledge of his history from a narrow set of sources." *Id.* at 524 (citing the ABA Guidelines for the Appointment and Performance of Counsel– stating that among the topics counsel should consider presenting are medical history, educational history, employment history, family and social history, prior adult and juvenile correctional experience, and religious and cultural influences)). Trial counsel did obtain a psychologist to evaluate Freeman. Applying Strickland's two-pronged inquiry, the Supreme Court has found that trial counsel's

failure to adequately investigate available mitigating evidence—for example, by declining to follow up with possible witnesses, neglecting to prepare a mitigation defense until one week before trial, and failing to discover ample available documentary evidence—amounts to ineffective assistance of counsel. See *Williams v. Taylor*, 529 U.S. 362, 395 (2000). In *Williams*, defense counsel presented only the testimony from defendant's mother and two neighbors, one of whom was never previously interviewed by the attorneys, and simply was in the audience and called to testify on the spot. *Id.* at 369. In contrast to the limited mitigation case presented at trial, the state habeas court was presented with evidence that the defendant experienced a childhood fraught with mistreatment, neglect, and abuse, and that he was borderline mentally retarded and possibly had organic brain damage. *Id.* at 370. The Court held that counsel's failure to present this compelling mitigating evidence could not be "justified by a tactical decision," and thus fell below an objective standard of reasonableness. *Id.* at 395, 120 S.Ct. 1495. The Court next concluded that the petitioner was entitled to relief because he was prejudiced by counsel's failures, regardless of the fact that the evidence did not directly rebut the prosecution's evidence. *Id.* at 397–98.

In this case, counsel failed to investigate or present any mitigation evidence at sentencing. Counsel also failed to move for a downward variance from the Guideline

33

sentence pursuant to the 18 U.S.C. § 3553(a) sentencing factors, or to object to Freeman's sentence as being substantively unreasonable. This was a clear case of deficient performance. Had counsel presented mitigation evidence, or moved for a downward departure, there is a reasonable probability that the outcome of his sentencing would have been different. Further, had counsel objected to Freeman's sentencing being substantively unreasonable, the issue would have been preserved for appellate review.

Accordingly, Freeman's sentence should be vacated for resentencing.

## VI. <u>CONCLUSION</u>

For the above and foregoing reasons, Freeman's conviction and/or sentence should be vacated so that he can plea anew, or be resentenced. In the alternative, it is respectfully requested that the Court hold an evidentiary hearing so that Freeman may further prove his meritorious grounds for relief, resolve facts in dispute, in and out of the record, and expand an incomplete record.

Respectfully submitted,

**LAW OFFICES OF D. CRAIG HUGHES**

s/ D. CRAIG HUGHES
D. CRAIG HUGHES
TBN# 10211025
7322 Southwest Freeway
1 Arena Place, Suite-1100
Houston, Texas 77074
TEL - 713-535-0683
FAX - 713-981-3805
Attorney for Defendant-Appellant
Walter Keitric Freeman